UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| FRANKLIN COUNTY, KENTUCKY, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 08-47-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OWNERS INSURANCE COMPANY, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On July 12, 2008, Plaintiff Franklin County, Kentucky, filed a number of actions against several insurance companies. Defendants Owners Insurance Company and Auto-Owners Mutual Insurance Company were included in these actions. Recently, a number of these cases were dismissed by agreement; however, several others remain pending. The Defendants in each of the remaining cases have moved to dismiss their respective actions because, *inter alia*, subject matter jurisdiction is lacking. In *Franklin Co. v. Hartford Casualty Insurance Company, et al.,* U.S. Dist. Ct., E.D. Ky., Cent. Div. at Frankfort, No. 3: 08-44-DCR (Dec. 15, 2008, Amended Memo. Opinion) the Court granted the defendants' motion to dismiss for this reason. Because the undersigned finds that the same reasons that compelled dismissal in *Hartford Casualty*, *id.,* are applicable here, Defendants Owners Insurance Company's and Auto-Owners Mutual Insurance Company's motion to dismiss [Record No. 31] will be granted.

## I.   BACKGROUND

Kentucky law authorizes local governments to impose an insurance premium tax upon insurance companies for the privilege of insuring risks located within their geopolitical boundaries. KRS 91A.080. If a local government chooses to impose the tax, the insurer is required to collect it from its insured, and then remits the revenue to the proper local government. KRS 91A.080(8). The proper local government for the purpose of the tax revenue remittance is determined by the location of the insured risk. For life insurance, the location of the insured risk is the residence of the insured. § 91A.080(2). For home, auto, boat, and similar insurance, the location of the insured risk is the physical location of the property. KRS 91A.080(3).

The Plaintiff alleges that, rather than using the actual location of the risk, the Defendants have improperly used the insureds' zip codes to determine where to remit the collected tax revenue. However, using zip codes as the basis for determining where the insured risk is located can create problems when a single zip code spans geopolitical boundaries. For example, the Plaintiff points to the fact that zip code 40601 encompasses the entire city of Frankfort as well as a majority of land located within Franklin County, but outside the Frankfort city limits. The Plaintiff contends that, by using zip code 40601 for determining where a risk is located, the Defendants may be collecting the subject tax from policyholders in Franklin County and then improperly remitting the revenue to the City of Frankfort. Thus, the Plaintiff alleges that it may not have received the full amount of tax revenue owed to it by the Defendants.

The Plaintiff seeks an accounting audit to determine whether the Defendants have remitted the proper amount of tax revenue. If the accounting audit shows that the Plaintiff has been underpaid, it seeks payment of delinquent taxes, together with penalties, interest, and any other compensatory or consequential damages allowed by law.

## II.  PROCEDURAL HISTORY

The Defendants contend that KRS 91A.08004(1) provides the exclusive remedy for local governments seeking to collect unremitted tax revenue. Thus, they argue that because KRS 91A.080 provides the KOI with exclusive jurisdiction over this matter, this Court lacks subject matter jurisdiction. The Plaintiff disputes that the remedy provided in this statutory section is the exclusive remedy available to it. Rather, it asserts that it also has a private right of action under KRS 446.070, which gives this Court subject matter jurisdiction over the Complaint.

## III.  STANDARD OF REVIEW

A federal court must have subject matter jurisdiction over every claim it hears, and this can never be forfeited or waived. U.S. CONST. art. III § 2; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Further, federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Arbaugh*, 546 U.S. at 514. If a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety. *Id.*

## IV.  ANALYSIS

KRS 91A.080 provides local governments with the authority to implement the subject tax, as well as an administrative remedy through which the local governments can seeking

redress for unpaid or underpaid tax revenue.[1] *See* KRS 91A.080(7). Subsection (7), which provides the administrative remedy, states in relevant part that:

> (a) Upon written request of the legislative body of any local government . . ., at the expense of the requesting local government, . . . the Office of Insurance shall audit, or cause to be audited by contract with qualified auditors, the books or records of the insurance companies or agents subject to the fee or tax to determine whether the fee or tax is properly collected and remitted.
>
> \* \* \*
>
> (c) If the Office of Insurance finds that an insurance company has willfully engaged in a pattern of business conduct that fails to properly collect and remit the fee or tax imposed by a local government pursuant to the authority granted by this section, the Office of Insurance may assess the responsible insurance company an appropriate penalty fee no greater than ten percent (10%) of the additional license fees or taxes determined to be owed to the local government. The penalty fee shall be paid to the local government owed the license fee or tax less any administrative costs of the Office of Insurance in enforcing this section.

*Id.*

While the Plaintiff acknowledges that KRS 91A.080 provides *a* civil remedy, it disputes that Kentucky's legislature intended for this to be *the exclusive* remedy. The Plaintiff argues that this Court's holding in *Kendrick* (per Judge David L. Bunning) established that a private right of action exists through KRS 446.070. In addition, the Plaintiff notes that, prior to July 15, 2008, KRS 91A.080 contained no express language stating that a party's exclusive remedy for seeking redress for potential violations of this statute was through the KOI.

---

[1] The Plaintiff utilized this procedure in 2005 when it requested the KOI conduct a full audit of all insurance companies doing business in Franklin County to verify whether it was receiving the proper amount of tax revenue from insurance companies. [Records No. 1, p. 7; No. 34, Ex. A]

### A. *Kendrick v. Standard Fire Ins. Co.*

*Kendrick*[2] establishes that a policyholder has a private right of action in federal court pursuant to KRS 446.070 to sue a defendant insurance company for illegally dealing in insurance premiums. This section provides that, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *Id.*

In *Kendrick*, plaintiff policyholders alleged that defendant insurers illegally administered the tax to policyholders in violation of KRS 304.12-190. Rather than filing a complaint with the KOI Commissioner pursuant to KRS 304.2-165, the plaintiffs filed suit pursuant to KRS 446.070. In its opinion, the *Kendrick* Court explained that,

> The gist of their lawsuit is that Defendant insurers are adding local tax charges to their insurance premiums — be it city, county, charter county, consolidated local government, or urban-county government taxes — along with a fee for collection of this local tax. According to Plaintiffs, while the tax is supposed to be based on the actual premiums paid to insure a risk in a particular geographic area, Defendants have failed in various ways to correctly administer these local taxes.

*Kendrick*, 2007 U.S. Dist. LEXIS 28461, at *5. The defendants in *Kendrick* filed a motion to dismiss for lack of subject matter jurisdiction. They argued:

> the Kentucky legislature has provided a specific administrative procedure for addressing insurance claims, that Plaintiffs sue for in violation of the insurance code, and therefore their claims are governed by and must be processed through this available administrative avenue. That administrative procedure calls for Plaintiff policyholders to file a written complaint with the insurance commissioner who, Defendants point out, has special expertise in this area. By statute, the Commissioner "shall review and investigate where applicable, all written complaints involving entities or individuals engaged in the business of insurance in Kentucky." KRS § 304.2-165(1). The policyholder may apply for

---

[2]   *Kendrick v. Standard Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 28461 (E.D. Ky. Mar. 31, 2007).

> a hearing if dissatisfied with the Commissioner's finding, and appeal the Commissioner's final order to the Franklin Circuit Court if so desired. Defendants contend this administrative process is mandatory for Plaintiffs' claim for violation of the insurance code, and that this Court should defer to the Commissioner for processing as to the rest of the Plaintiffs' claims since they all arise from the same conduct.

*Id.* at *24–25.

> In response to the defendants' motion to dismiss, the plaintiffs argued:
>
> neither KRS § 91A.080 nor Chapter 304 (insurance code) require policyholders charged an illegal tax and collection fee to submit to the administrative process as their exclusive procedural device. Plaintiffs maintain that, while Chapter 304 allows for the Commissioner to assess penalties against insurance companies for various infractions of the code, the chapter fails to provide for an express remedy to policyholders for overbilling. Plaintiffs rely on KRS § 446.070 as the vehicle for providing them with a private cause of action against their insurers for violation of KRS § 304.12-190.

*Id.* at *25.

After considering the parties' arguments, the *Kendrick* Court held that "Plaintiffs are not bound by or limited to KRS 304.2-165 for presentation of their claims," and that "KRS § 304.2-165 is but a vehicle for lodging some form of dissatisfaction with an insurer, rather than *the* vehicle. *Id.* at *25–26, *27–28 (emphasis original). In reaching this conclusion, the court rejected the defendants' argument that "KRS 304.2-165 does have a remedy specified within it and that Plaintiffs cannot just employ KRS 446.070 because they do not like the remedy that is already provided within KRS 304.2-165." The rationale for rejecting this argument was that the "remedy [in KRS 304.2-165] is not in the form of recovery from the offender of the actual damages sustained." *Id.* at 28.

The Plaintiff's reliance on *Kendrick* for the proposition that this Court has already determined that a private right of action exists under the circumstances presented here is flawed. *Kendrick* held that KRS 446.070 provided a private right of action for *policyholders* to sue insurance companies for alleged violations of KRS 304.12-190. *Id.* at *29. Under, KRS 446.070, "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." However, in *Grzyb v. Evans*, the Supreme Court of Kentucky held that recovery under KRS 446.070 "is limited to where the statute is penal in nature, or where by its terms the statute does not prescribe a remedy for the violation." *See Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) (citation omitted). Additionally, the *Grzyb* Court held that, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, *the aggrieved party is limited to the remedy provided by the statute*." *Id.* (emphasis added) (citations omitted).

The present case is distinguishable from *Kendrick* in several material ways. First, although both case involved taxes levied pursuant to KRS 91A.080, *Kendrick* involved alleged violations of KRS 304.12-190, while the instant matter involves an alleged violation of KRS 91A.080(8). As the undersigned concluded in *Hartford Casualty, supra,* this is an important distinction. Section 304.12-190 declares the unlawful act (improper collection of tax revenue), but does not specify a remedy available to the aggrieved party. However, KRS 91A.080 declares *both* the unlawful act (failure to properly remit tax revenue) *and* the specific remedy available to the aggrieved party. Section 91A.080(7)(a) specifically provides for an aggrieved party to request an audit from the KOI. If the audit uncovers improper tax revenue remittance, KRS

91A.080(7)(c) grants the KOI the authority assess a penalty to the responsible insurance company in addition to the amount owed to the local government. Relying on the Kentucky Supreme Court's holding in *Grzyb*, a party suing an insurance company for a violation of KRS 91A.080 is limited to the remedy provided in that statutory section. *See Grzyb*, 700 S.W.2d at 401.

The second important distinction is that the plaintiffs in *Kendrick* were policyholders and the Plaintiff in this case is a local government. This Court reads *Kendrick* as being limited to the question of whether *policyholders* have a private cause of action. The question of whether local governments have the same private cause of action was not addressed.

Finally, unlike KRS 304.2-165, which the *Kendrick* Court held did not provide a remedy to recover actual damages, KRS 91A.080 provided such a remedy. The Plaintiff disputes this point and argues that KRS 91A.080(7):

> [C]ontains *no* express language which would permit Franklin County to actually recover delinquent taxes in connection with the audit. Instead, the KOI is reserved the right to revoke a license, and to impose penalties and interest, in the event of willful failure to properly calculate, collect and remit the taxes, without specifically providing for a refund to the local government requesting the audit.

[Record No. 34, p. 8] (emphasis original) In support of this contention, the Plaintiff claims that when the KOI audited Safe Auto Insurance Company ("Safe Auto") on the Plaintiff's behalf in 2005, the KOI did not directly order Safe Auto to remit the tax it owed to the Plaintiff. Rather, the Plaintiff claims that the KOI merely recommended that Safe Auto review its books in light of the KOI audit and file amended tax reports as necessary. [*Id.*, p. 8] Thus, the Plaintiff argues

that the KOI's failure to order Safe Auto to remit the taxes owed demonstrates that KRS 91A.080(7) does not provide a remedy for the recover of actual damages.

However, while the repayment of unremitted taxes is not expressly stated in subsection (7), it can be inferred from other subsections that KRS 91A.080 provides for the recovery of actual damages in the form of unremitted taxes. Specifically, subsection (8) mandates annual remittance of the tax revenue owed by insurance companies to each local government. In addition, subsection (9) permits local governments to charge interest on tax revenue not remitted on or before the due date. The Court is unpersuaded by the argument that these subsections do not apply to a delinquent insurance company after a KOI audit determines that a local government has been underpaid.

Additionally, the Court disagrees with the Plaintiff's contention that the KOI did not order Safe Auto to remit the unpaid tax revenue to the Plaintiff after deficiencies were uncovered in the 2005 KOI audit. The KOI's Special Examination Report concluded that:

> It is recommended, in accordance with KRS 91A.080 and 806 KAR 2:095, that [Safe Auto] review the company's local government premium tax reports and the company's location of risk data during the time frame of this examination and amend the company's tax reports as necessary to properly allocate the payment of local government premium taxes to the appropriate taxing jurisdiction. *Where appropriate, necessary corrections **shall** be made that are likely to result in credits against prior taxes overpaid to the incorrect taxing jurisdiction and additional taxes paid to the proper taxing authority.*

[Record No. 34, Exhibit A, p. 16] (emphasis added)

Thus, since this Court finds that the remedy in KRS 91A.080 provides for recovery of actual damages, the rational behind *Kendrick* does not apply here. For the reasons discussed above, the Court declines to apply the holding in *Kendrick* to this case. Accordingly, since KRS

91A.080 declares an unlawful act and provides a specific remedy by which actual damages can be obtained, the Plaintiff is limited to seeking relief via the remedy provided in KRS 91A.080. *See Grzyb*, 700 S.W.2d at. 401.

### B. Kentucky House Bill 524

The Plaintiff also asserts that, at the time its Complaint was filed, KRS 91A.080 did not contain express language stating that the remedy provided in the statute was intended to be exclusive. However, strong evidence supports the Defendants' contention that the Kentucky legislature always intended for the remedy in KRS 91A.080 to be exclusive for local governments.

The Plaintiff filed this Complaint, along with a series of similar complaints, on July 12, 2008. [Record No. 1] On July 15, 2008, Kentucky House Bill ("H.B.") 524 became effective.[3] Through H.B. 524, the legislature amended KRS 91A.080 and enacted a new statute, KRS 91A.0804. *See* 2008 Ky. H.B. 524. Section 91A.0804, entitled *Exclusive Remedy for Adjustments Relating to Licensing Fees or Taxes Imposed Under KRS 91A.080* opens with the following:

> The provisions of this section shall provide the *sole and exclusive* method for the filing of amended returns and requests or assessments by an insurance company, local government, or policyholder for nonpayment, underpayment, or overpayment of any license fees or taxes imposed pursuant to KRS 91A.080 and the appeals from the denial or refusal thereof.

---

[3] H.B. 524 was signed by the Governor on April 14, 2008. *See* 2008 Bill Tracking Ky. H.B. 524. Although the statute did not take effect until July 15, 2008, the Bill's passage and text was a matter of public knowledge as early as April 17, 2008. *See Id.* (Load-Date: April 17, 2008). Thus, at the time the Plaintiff filed this Complaint, available information indicated that the Legislature intended, at least after July 15, 2008, for the remedy in § 91A.080 to be exclusive.

KRS 91A.0804(1) (emphasis added). The statute then describes the exclusive remedial procedure available to local governments.

> If a local government has a reasonable basis to believe that a license fee or tax imposed by it in accordance with KRS 91A.080 has not been paid or has been underpaid, the local government *shall* request the Office of Insurance to conduct an audit pursuant to the provisions of KRS 91A.080(7) within the time provided in subsection (1) of this section.

KRS 91A.0804(4)(a) (emphasis added). Subsection (4) explains the steps for recovering unremitted tax revenue if the audit shows that a local government was not paid or was underpaid. *See* KRS 91A.0804(4)(b)–(e).

Based on the enactment of H.B. 524, it is clear that the Kentucky legislature intended for the remedy in KRS 91A.080(7) to be the exclusive for all disputes *after* July 15, 2008. However, the Plaintiff filed this Complaint three days earlier (July 12, 2008). KRS 91A.0804 expressly states that these provisions "shall not apply to any . . . assessment by a local government that is affected by litigation pending on July 15, 2008." *See* KRS 91A.0804(1). Thus, the Plaintiff contends that KRS 91A.0804 does not apply to the instant case.[4] [Record No. 34, pp. 9–10] And while KRS 91A.0804 may not directly affect this case, it provides some insight into the legislative intent behind KRS 91A.080.

"The general rule in statutory construction is to ascertain and give effect to the intent of the General Assembly." *Horn by Horn v. Commonwealth*, 916 S.W.2d 173, 175 (Ky. 1995). The

---

[4] Under Kentucky law, "[n]o statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). The Court finds that there is no *express* declaration of retroactivity in § 91A.0804, but notes that the Defendants claim that retroactivity can be implied by the presence of KRS 91A.0804(7). [Record No. 31, p. 6] Additionally, the Defendants argue that the disclaimer does not apply to the Plaintiff's Complaint, because the Plaintiff was not litigating an *assessment* before this Court prior to July 15, 2008. [*Id.*, p. 5] The Court need not address either of these issues, because KRS 91A.080 provided the KOI with exclusive jurisdiction over this matter even before the passage of H.B. 524.

Supreme Court has also noted that later statutes may provide guidance in determining the legislative intent of earlier statutes.[5] *See Cannon v. University of Chicago*, 441, U.S. 667, 686 n.7 (1979). Additionally, under Kentucky law, "[i]t is presumed that the Legislature was cognizant of preexisting statutes at the time it enacted a later statute on the same matter." *Shewmaker v. Commonwealth*, 30 S.W.3d 807, 809 (Ky. App. 2000). Since H.B. 524 both amended KRS 91A.080 and enacted KRS 91A.0804, the legislature was obviously cognizant of the language in KRS 91A.080 when H.B. 524 was enacted.

The Plaintiff contends that H.B. 524 was enacted to change the law as it was being interpreted so that the remedy provided in KRS 91A.080 would be the exclusive remedy after July 15, 2008. The Plaintiff argues that "the very fact that the statue was amended to make the administrative remedies mandatory and exclusive, reveals that prior to the amendment (and at the time that is relevant here) the operative statutes *did not* provide a mandatory or exclusive administrative remedy." [Record No. 34, p. 9] (emphasis original) In support, the Plaintiff cites *Dorris v. Absher*, 179 F.3d 420 (6th Cir. 1999) (holding that Congress intended to change the meaning of a statute where an amendment changed the operative verb from "shall" to "may") and *Whitley Co. Bd. of Educ. v. Meadors*, 444 S.W.2d 890 (Ky. 1969) (holding that the presumption is that the legislature intended to change the law through the amendment). The Plaintiff concludes that there is "little doubt that the 'new' KRS 91A.080, is a direct legislative response to judicial interpretation of the 'old' KRS 91A.080," and therefore, KRS 91A.0804 was

---

[5] Although *Cannon* dealt with congressional intent, the general concept noted by the Supreme Court is equally applicable for shedding light on a state legislature's intent.

intended to change KRS 91A.080, rather than clarify the statute's meaning before the amendment. [*Id.*, p. 10]

The Court disagrees, and notes that the Plaintiff's conclusion that the remedy in KRS 91A.080 was not intended to be exclusive prior to July 15, 2008, does not make sense in light of KRS 68.197(4)(d). KRS 68.197 regulates the imposition of license fees in counties with populations of 30,000 people or more.[6] Franklin County, with a population over 30,000, is subject to this statute.[7] Subsection (4)(d) specifically provides that, "[n]o license tax shall be imposed or collected from any insurance company except as provided in KRS 91A.080." Based on this subsection, it is clear that the Kentucky legislature intended for local governments to collect insurance premium taxes exclusively through the procedure in KRS 91A.080. Thus, if the Plaintiff was allowed to collect the taxes supposedly owed under KRS 91A.080 through this action in federal court, the legislature's admonition in KRS 68.197(4)(d) would be meaningless.

Additionally, under Kentucky law, counties "only have such power as have been granted by the legislature, expressly or necessarily implied, by some provision of law." *Hardwick v. Boyd County Fiscal Court*, 219 S.W.3d 198, 202 (Ky. 2007). The Plaintiff's taxing authority originates from KRS 68.197. *Hardwick v. Boyd County Fiscal Court*, 2005 U.S. Dist. LEXIS 27035, *6 (E.D. Ky. Nov. 7, 2005). This grant of authority, like all grants of authority to counties, "carries with it the prohibition of exercising any authority *in any manner different from*

---

[6] Counties with under 30,000 residents also have the authority to impose and collect license, franchise, and occupational taxes, but this authority is pursuant to KRS 67.083. *Casey County Fiscal Court v. Burke*, 743 S.W.2d 26, 27 (Ky. 1988). *See also*, KY. CONST. § 181; *Fiscal Court of Jefferson County v. Louisville*, 559 S.W.2d 478 (Ky. 1977).

[7] The U.S. Census Bureau 2006 estimated population for Franklin County, Kentucky is 48,183. *See* U.S. Census Bureau–State & County QuickFacts, http://quickfacts.census.gov/qfd/states/21/21073.html.

*that permitted.*" *Hardwick*, 219 S.W.3d at 202 (emphasis original). Therefore, KRS 68.197(4)(d) provides a strong indication that the legislature intended for the remedy in KRS 91A.080 to be the exclusive remedy for the Plaintiff to collect unremitted Tax revenue from an insurance company.

Finally, while in all likelihood the holding in *Kendrick* was the motivating force for the enactment of H.B. 524, *Kendrick* only held that policyholders have a private cause of action. It did not address whether local governments also have a private cause of action. Therefore, if H.B. 524 was a reaction to *Kendrick*, it underscores the point that the Bill changed KRS 91A.080 as it pertained to policyholders, and was not meant to change the statute as it pertained to local governments.

In summary, even prior to the enactment of H.B. 524, the exclusive remedy available to local governments seeking to collect unremitted tax revenue was through KRS 91A.080. Accordingly, the Plaintiff's Complaint will be dismissed pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. By statute, exclusive jurisdiction over this matter is vested in the KOI.

### C.     Plaintiff has Not Exhausted its Available Administrative Remedy

The Defendants also assert an alternative argument that even if KRS 91A.080 did not provide an exclusive remedy, this Court still lacks subject matter jurisdiction, because the Plaintiff did not properly exhaust its claim. [Record No. 31, pp. 9–11] The doctrine of exhaustion of remedies is "a well-settled rule of judicial administration that has long been applied in this state." *Ky. Ret. Sys. v. Lewis*, 163 S.W.3d 1, 3 (Ky. 2005). The purpose of

exhaustion is to allow an administrative body to compile a complete record and render a final decision before the matter is brought into court. *Id.* In addition, the Supreme Court of Kentucky has held that, "where an administrative remedy is provided by the statute, relief must be sought from the administrative body and this remedy exhausted before the courts will take hold. . . . Ordinarily, the exhaustion of that remedy is a jurisdictional prerequisite to resort to the courts." *Goodwin v. City of Louisville*, 215 S.W.2d 557, 559 (Ky. 1948).

The Plaintiff claims that it exhausted its administrative remedies because, in 2005, the Plaintiff sought KOI audits of all insurance companies doing business in Franklin County. [Record No. 34, pp. 11–13] However, the KOI notified the Plaintiff that it was unable to perform all the requested audits, and asked the Plaintiff to limit its requests. The Plaintiff then pared down the listed to eleven companies, and the KOI *sua sponte* selected five to audit on the Plaintiff's behalf. [*Id.*, p. 12] The Plaintiff argues that the KOI's inability to perform the requested audits in 2005 demonstrates that attempting to go through the KOI again would be futile. [*Id.*, p. 13]

The Court is unpersuaded by the Plaintiff's argument that it exhausted its claim. First, the Court notes that in 2005 the Plaintiff did not specifically request audits of either of the Defendant insurance companies in this case. [Record No. 34, p. 13] Second, the remedy in KRS 91A.080(7)(a) specifically provides that a local government can ask for the KOI to contract with qualified outside auditors to conduct the insurance company audits. Based on the large number of audits requested by the Plaintiff, it is not surprising that the KOI was unable to fully oblige

the Plaintiff. However, there is no indication that the Plaintiff took the next step by asking that the KOI contract with outside auditors to perform the requested audits.

Exhaustion of remedies "is not required when continuation of an administrative process would amount to an exercise in futility." *Ky. Ret. Sys.*, 163 S.W.3d at 3. However, the Plaintiff has not established that seeking an audit of the Defendant insurance companies through the KOI would be futile, because the Plaintiff could request that the KOI contract with outside auditors if the KOI were unable to perform the audits themselves. Accordingly, the Plaintiff did not properly exhausted its available administrative remedy before filing the present action.

### D.     Conversion and Negligence Claims Must be Dismissed

The Plaintiff's Complaint also contains two supplemental claims: conversion and negligence. [Record No. 1, pp. 15–16] These claims must also be dismissed, because they are premised on the statutory claim which this Court lacks jurisdiction to hear. *See Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1255 ("If the court dismisses plaintiff's federal claim pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist) (6th Cir. 1996) (emphasis original); 16 MOORE'S FED. PRAC. § 106.66[1] (noting that if a claim is dismissed for lack of subject matter jurisdiction, the district court has no discretion to retain the supplemental claims for adjudication, because the court does not have the discretion to exceed the scope of its Article III power).

### V.     CONCLUSION

Based upon the foregoing analysis, it is hereby **ORDERED** as follows:

(1)     The Defendants' motion to dismiss [Record No. 31] is **GRANTED**;

(2) The Plaintiff's Complaint is **DISMISSED** pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

This 16th day of December, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge